Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdaltonlaw.com
Tel. (337) 371-0375

**UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | | |
|---|---|---|
| **IAN HEATLEY AND DIANA HEATLEY** § § § | | **CIVIL ACTION NO:** |
| | | **2:21-cv-04581** |
| *Plaintiff*s § § | | |
| v. § | | |
| **CAVALIER HOMES, INC.;** § | | |
| **LITTLE HOMES OF TEXAS, INC;** § | | |
| **ROADMASTERS TRANSPORT** § | | |
| **COMPANY, LLC; AND** § | | |
| **21ST MORTGAGE CORPORATION** § § | | |
| *Defendants* § | | **JURY TRIAL REQUESTED** |

## COMPLAINT

### I. Parties

1. Plaintiffs, IAN HEATLEY and DIANA HEATLEY, now and have been at all times material hereto a citizens of the State of California.

2. Defendant, CAVALIER HOMES, INC., hereinafter "CAVALIER HOMES," a Delaware and Alabama citizen and corporation with its principal place of business in Montgomery County, Alabama and is the manufacturer and warrantor of the tiny home Plaintiffs purchased.

CAVALIER HOMES's agent for service of process is CT Corporation System, 2

-1-

North Jackson St., Suite 605, Montgomery, AL 36104.

3. Defendant, LITTLE HOMES OF TEXAS, INC., hereinafter "LITTLE HOMES," is a Texas corporation and a citizen of the State of Texas and the seller of the tiny home Plaintiffs purchased.

LITTLE HOMES is authorized to do and doing business in the State of Texas whose agent for service of process is Saleem A. Malik, 18855 Hwy 105 W., Montgomery, TX 77356.

4. Defendant, ROADMASTERS TRANSPORT COMPANY, LLC, hereinafter "ROADMASTERS TRANSPORT," is a Texas limited liability company and a citizen of the State of Texas and is the transporter of the tiny home Plaintiffs purchased.

ROADMASTERS TRANSPORT's agent for service of process is Charles M Ladd, 1201 Highway 175 W., Athens, TX 75751.

5. Defendant, 21ST MORTGAGE CORPORATION, hereinafter "21ST MORTGAGE," is a Tennessee financial institution and a citizen of Tennessee and is the lien holder of the tiny home Plaintiffs purchased.

21ST MORTGAGE's agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## II. Jurisdiction

6. This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs' state law claims because said claims are so related to the claims within the Court's original

jurisdiction that he form part of the same case or controversy under Article 3 of the United States Constitution.

### III.  Venue

7.  Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

Venue is also proper in this district under Tex. Bus. & Com. Code §17.56.  VENUE. An action brought under this subchapter may be brought:

>  (1)  in any county in which venue is proper under Chapter 15, Civil Practice and Remedies Code;  or
>
>  (2)  in a county in which the defendant or an authorized agent of the defendant solicited the transaction made the subject of the action at bar.

Venue is also proper in this district under Tex. Bus. & Com. Code §15.033.  Breach of Warranty By Manufacturer:

A suit for breach of warranty by a manufacturer of consumer goods may be brought in any county in which all or a substantial part of the events or omissions giving rise to the claim occurred, in the county in which the manufacturer has its principal office in this state, *or in the county in which the Plaintiffs resided at the time the cause of action accrued*.

### IV. Conditions Precedent

8.  All conditions precedents have been performed or have occurred.

### V.  Facts

#### A. The Transaction

9.  On March 18, 2021, Plaintiffs purchased a new 2020 ANSI A119.5 PARK MODEL

LS-101 ALEXANDER bearing VIN 4C9AA424XLA432174, hereinafter "PARK MODEL," from LITTLE HOMES. The PARK MODEL was purchased primarily for Plaintiffs' personal use.

10. The sales price of the PARK MODEL was $97,891.00 excluding finance charges. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See ***Hughes v. Segal Enterprises, Inc.***, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); ***Chariton Vet Supply, Inc. v. Moberly Motors Co.***, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).

11. Defendant, ROADMASTERS TRANSPORT, was hired to transport the PARK MODEL from the Defendant, LITTLE HOMES, to the Plaintiffs' lot located in Arizona.

12. The contract of sale was assigned to Defendant, 21ST MORTGAGE. The contract which was assigned contained the following provision:

> **"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."**

### B. Implied Warranties

13. As a result of the sale of the PARK MODEL by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the PARK MODEL would pass without objection in the trade under the contract description; and that the PARK MODEL was fit for the ordinary purpose for which such motor vehicles are purchased.

14. Subsequent to the sale, an implied warranty arose in connection with the repairs

performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

15. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the PARK MODEL occurring during a specified warranty period resulting from defects, non-conformities, and conditions in material or workmanship would be repaired, and that repair work on the PARK MODEL had, in fact, repaired the defects, non-conformities, and conditions.

16. Plaintiffs' purchase of the PARK MODEL was accompanied by express warranties offered by Defendants and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the PARK MODEL.

17. The basic warranties covered any repairs or replacements needed during the warranty period due to defects, non-conformities, and conditions in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the CAVALIER HOMES's and LITTLE HOME'S warranty booklet and owners manual.

### D. Actionable Conduct

18. In fact, when delivered, the PARK MODEL was defective in materials and workmanship, with such defects, non-conformities, and conditions being discovered shortly after purchase. Many defects, non-conformities and conditions have occurred since purchase, including, but not limited to:

**THE VEHICLE WAS PURCHASED ON MARCH 18, 2021**

**FROM LITTLE HOMES OF TEXAS IN CONROE, TEXAS.**

**THE VEHICLE'S FRAME WAS SEVERELY DAMAGED UPON DELIVERY AND MISSING AN AXLE.**

**AS A RESULT, THE PARK MODEL HAS SEVERE STRUCTURAL DAMAGE AND IS UNUSABLE."**

19. The defects, non-conformities, and conditions experienced by Plaintiffs with the PARK MODEL substantially impaired its use, value and safety.

20. Plaintiffs directly notified the Defendants of the defects, non-conformities and conditions of the PARK MODEL. Plaintiffs notified Defendants that they wanted a rescission of the sale of the PARK MODEL but Defendants has failed and refused to buy back Plaintiffs' defective PARK MODEL.

### VI.   Causes of Action

**COUNT 1: VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

21. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

22. Plaintiffs are "consumers" as defined in the DTPA.

23. Defendants violated the following provisions of the DTPA:

    a. §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs;

    b. §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiffs were deprived of substantial value of bargain because the defect was not corrected within reasonable time);

    c. §17.50(2): breach of the implied warranty to perform repairs in a good and

workmanlike manner, as set forth in *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987);

    d.    §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

    e.    §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

24.  Because of the inherent defects in the PARK MODEL, which defects existed at the time the PARK MODEL was sold, although not discovered until later, the PARK MODEL was and is not merchantable in that it would not pass without objection in the trade under the contract description and it was and is not fit for the ordinary purpose for which such recreational vehicles are used by consumers. Furthermore, Defendants have failed to perform the repair work in a good and workmanlike manner. This conduct by Defendants constitute a breach of the implied warranties described above which breach is actionable under DTPA § 17.50(a)(2).

25.  Since the PARK MODEL was not repaired, the express warranties that it would be and had been repaired were breached. Defendants' breach of the express warranties is actionable under DTPA § 17.50(a)(2).

26.  Defendants' statements that the PARK MODEL's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendants' services. For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

27.  The Defendants acts or practices in the selling and/or repairing of the PARK MODEL to Plaintiffs were unconscionable actions or courses of action because they took advantage of the Plaintiffs' lack of knowledge, ability, experience, or capacity of the Plaintiffs to a grossly unfair

-7-

degree. For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

28. Plaintiffs further contend that Defendants' violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiffs to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

29. This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

30. The limited remedy in Defendants' warranty fails of its essential purpose and deprives Plaintiffs of the substantial value of the bargain because Defendants or its authorized dealerships did not correct the defects within a reasonable time. Tex. Bus. and Com. Code § 2.719. Therefore, any purported limitation of remedies is ineffective.

31. The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

32. This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

33. Any purported waiver or limitations of rights under DTPA by the Defendants is a violation of public policy under §17.42. WAIVERS: PUBLIC POLICY:

    (a) Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void; provided, however, that a waiver is valid and enforceable if:

        (1) the waiver is in writing and is signed by the consumer;

        (2) the consumer is not in a significantly disparate bargaining position;

and

  (3) the consumer is represented by legal counsel in seeking or acquiring the goods or services.

 (b) A waiver under Subsection (a) is not effective if the consumer's legal counsel was directly or indirectly identified, suggested, or selected by a defendant or an agent of the defendant.

 (c) A waiver under this section must be:

  (1) conspicuous and in bold-faced type of at least 10 points in size;

  (2) identified by the heading "Waiver of Consumer Rights," or words of similar meaning; and

  (3) in substantially the following form:

"I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law that gives consumers special rights and protections. After consultation with an attorney of my own selection, I voluntarily consent to this waiver."

 (d) The waiver required by Subsection (c) may be modified to waive only specified rights under this subchapter.

34. Any purported limitation or reduction in the statute of limitations by the Defendants under DTPA must not be less than two years under the Texas Civil Practice and Remedies Code §16.070. Contractual Limitations Period:

 (a) Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

 (b) This section does not apply to a stipulation, contract, or agreement relating to the sale or purchase of a business entity if a party to the stipulation, contract, or agreement pays or receives or is obligated to pay or entitled to receive consideration under the stipulation, contract, or agreement having an

aggregate value of not less than $500,000.

35. Under DTPA the statute of limitations is two years §17.565. LIMITATION:

**All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. The period of limitation provided in this section may be extended for a period of 180 days if the Plaintiffs proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the Plaintiffs to refrain from or postpone the commencement of the action.**

36. As a direct and proximate result of Defendants' willful violation of their obligations under the DTPA, Plaintiffs have suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the PARK MODEL, damages associated with the inconvenience suffered as a result of the complete failure of the to operate properly, the loss of use of the during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, and attorneys' fees. Plaintiffs have incurred and will continue to incur in order to protect their rights in this matter. The precise amount of damages is unknown at the present time but is estimated to be in excess of $350,000.00 and will be shown according to proof at trial. Attorneys' fees, loss of use, interest, and other damages continue to accrue.

37. Under the DTPA, Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevail. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 2: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

38. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

39. Plaintiffs are a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

40. Defendants are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

41. The PARK MODEL hereinabove described is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

42. The express warranties more fully described hereinabove pertaining to the PARK MODEL is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

43. The actions of Defendants in failing to tender the PARK MODEL to Plaintiffs free of defects, non-conformities, and conditions and refusing to repair or replace the defective PARK MODEL tendered to Plaintiffs constitutes a breach of the written and implied warranties covering the PARK MODEL and hence a violation of the Magnuson-Moss Warranty Act.

44. Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

45. As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth hereinabove, Plaintiffs have been damaged hereinabove in an amount in excess of $350,000.00 according to proof at trial.

46. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 3:    BREACH OF EXPRESS WARRANTIES**

47. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

48. Th Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs' PARK MODEL or those similarly situated were free from inherent risk of failure or latent defects, non-conformities, and conditions. In addition, the Defendants issued an expressed written warranty which covered the PARK MODEL and warranted that the PARK MODEL was free of defects, non-conformities, and conditions in materials and work quality at the time of delivery.

49. As alleged above, the Defendants breached its warranties by offering for sale, and selling as safe to Plaintiffs, an PARK MODEL that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

50. In breach of the foregoing warranties, the Defendants have failed to correct said defects, non-conformities, and conditions.

51. The damages Plaintiffs have suffered are a direct and proximate result of Defendants'

actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 4:  BREACH OF IMPLIED WARRANTIES**

52. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

53. The Defendants impliedly warranted that Plaintiffs' PARK MODEL which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

54. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants are unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects, non-conformities, and conditions existed and might not be discovered, if at all, until the PARK MODEL had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects, non-conformities, and conditions from Plaintiffs.

55. Because of the defects, non-conformities, and conditions, Plaintiffs' PARK MODEL is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendants breached the implied warranty of merchantability.

56. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 5: BREACH OF CONTRACT

57. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

58. Plaintiffs would show that the actions and/or omissions of Defendants described herein above constitute breach of contract, which proximately caused the direct and consequential damages to Plaintiffs described herein below, and for which Plaintiffs hereby sues.

59. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### VII. Economic and Actual Damages

60. Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a.. Out-of-pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

    b. Loss of use;

    c. Loss of the "benefit of the bargain";

    d. Diminished or reduced market value; and

    e. Costs of repairs.

### VIII. Damages for Mental Anguish

61. Plaintiffs would further show false, misleading and deceptive acts, practices and/or omissions described herein above were committed "knowingly," as provided by Section 17.45(9)

of the Texas Business and Commerce Code, in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

62. As a result of such acts, practices and /or omissions, Plaintiffs sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code, and for which Plaintiffs hereby sues in an amount in excess of the minimum jurisdictional limits of this Court.

### IX. Multiple Damages

63. The Defendants' conduct in violation of the DTPA was committed knowingly, as that term is defined in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

64. Plaintiffs further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

65. Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of their economic damages.

### VI. Request for Rescission

66. Plaintiffs seeks the remedy of rescission of the sales contract.

67. Plaintiffs revokes their acceptance of the PARK MODEL for the reason that its defects, non-conformities, and conditions substantially impair its use, value, and safety to Plaintiffs and the acceptance was based on Plaintiffs' reasonable reliance on the false representations and

warranties of the Defendants that the defects, non-conformities, and conditions in the PARK MODEL would be repaired, and no reasonable prudent buyer would have purchased the PARK MODEL with knowledge of these defects, non-conformities, and conditions prior to the sale. Accordingly, Plaintiffs seek a cancellation of the sales contract and an order of the court restoring to him the money obtained by Defendants as a result of the false representations and breaches of express and implied warranties as set forth above. Plaintiffs also seek cancellation of the debt and offers to return the PARK MODEL to the Defendants.

### VII.   Attorney Fees and Costs

68.   Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

### VIII.   Prayer for Relief

69.   For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a.    For general, special and actual damages according to proof at trial;

    b    Rescinding the sale of the 2020 ANSI A119.5 PARK MODEL LS-101 PARK MODEL bearing VIN 4C9AA424XLA432174 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.    For incidental and consequential damages according to proof at trial;

d. Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges;

e. Any diminution in value of the PARK MODEL attributable to the defects, non-conformities, and conditions;

f. Past and future economic losses;

g. Prejudgment and post-judgment interest;

h. Attorney fees;

i. Costs of suit, expert fees and litigation expenses; and

j. All other relief this Honorable Court deems appropriate.

### XI. Demand for Jury Trial

70. Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdaltonlaw.com
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS